UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CAROLYN NEW HOLY, STEPHANIE STAR COMES OUT and SANDRA FIRE LIGHTNING,<br><br>          Plaintiffs,<br><br>   vs.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS, DANIELLE MCQUILLAN, Deputy Regional Director-Indian Services, Great Plains Regional Office, and JOHN M. LONG, Superintendent, Pine Ridge Agency,<br><br>          Defendants. | CIV. 19-5066-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiffs are citizens of the Oglala Sioux Tribe ("OST") and members of the Constitutional Reform Committee Task Force ("Task Force"), a group convened to draft proposed amendments to the OST Constitution. (Docket 1). They brought this suit against defendants, federal officials and agencies, alleging the Bureau of Indian Affairs ("BIA") failed to extend a deadline to submit a petition for an election. Plaintiffs also assert the one-year limit established by regulation is arbitrary and that defendants' alleged failure to extend the deadline violated a trust responsibility owed to them as Native Americans. Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to

state a claim. (Docket 8). For the reasons given below, the court grants defendants' motion and dismisses the complaint.

I. **Legal Standards**

Pursuant to Federal Rule of Civil Procedure 12(b), defendants challenge the court's subject matter jurisdiction and the complaint's sufficiency.

Under Rule 12(b)(1), defendants have the right to challenge the "lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1). "In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleading." Croyle v. United States, 908 F.3d 377, 380 (8th Cir. 2018). "In a factual attack, the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Id. (internal quotations omitted). "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (internal citation omitted).

Rule 12(b)(6) allows the court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Two "working principles" underlie Rule 12(b)(6) analysis. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. Id. "[A] complaint must allege 'more than labels and conclusions, and a formulaic

2

recitation of the elements of a cause of action will not do.'" Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The court does, however, "take the plaintiff's factual allegations as true."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden, 588 F.3d at 594.

## II.  Facts

Defendants essentially allege that, taking the complaint as true, it fails for lack of subject matter jurisdiction and pleading deficiencies.  The court does not discern any material factual questions in the parties' briefing which impact its analysis.  Accordingly, the court evaluates defendants' motion to dismiss as a facial attack on the complaint.  In a facial attack, the court "consider[s] only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."  Carlsen, 833 F.3d at 908 (internal quotation omitted).

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion into one for summary judgment.

3

Zean v. Fairview Health Services, 858 F.3d 520, 526 (8th Cir. 2017) (internal quotation omitted).  The factual summary given here derives from the complaint and from the affidavits and exhibits filed by the parties in connection to their briefing on the motion to dismiss.  The court finds the materials outside the pleadings cited in this order are embraced by the complaint.

Plaintiffs are each OST citizens.  (Docket 1 at ¶¶ 1-4).  The OST resides on the Pine Ridge Reservation, with a reservation population of approximately 38,000 citizens, and struggles with issues of poverty, including lack of access to education.  Id. at ¶¶ 14-17.  "Income level and educational attainment" are connected to "political participation[.]"  Id. at ¶ 18.

On April 29, 1868, the United States entered into the Treaty of Fort Laramie with the bands of the Great Sioux Nation in an attempt to end warfare on the Northern Plains caused by an influx of American settlers onto tribal lands. 15 Stat. 635 (1868); see also United States v. Sioux Nation of Indians, 448 U.S. 371, 374-84 (1980).  The OST created a federally recognized tribal government under the Indian Reorganization Act ("IRA") in 1936 and established a constitution.  Constitution and By-Laws of the Oglala Sioux Tribe of the Pine Ridge Reservation of South Dakota, Jan. 15, 1936, Certificate of Adoption.  The OST Constitution requires "a petition signed by one-third (1/3) of the qualified voters, members of the Tribe" before an election may be held to ratify proposed constitutional amendments.  OST Constitution Art. XI.

The OST Tribal Council created the Task Force on May 31, 2017, "in order to create and submit constitutional revisions to [BIA] so that a secretarial election may be held for the tribe at large." (Docket 1 at p. 1 & ¶ 19). Plaintiffs are members of the Task Force. Id. at ¶ 19. The Task Force collected signatures for the petition required to hold an election, beginning on May 21, 2018. Id. at ¶ 21. However, on May 28, the OST Tribal Council "decided to table the constitutional reform initiative" pending "feedback" from the tribal districts. Id. at ¶ 22. Funding for the Task Force was suspended between August 10 to October 23. Id. at ¶¶ 23-24. The Council's decision to table and defund the Task Force's work between May and October of 2018 made it "virtually impossible . . . to seek and obtain signatures on the petition[.]" Id. at ¶ 26.

Nevertheless, the Task Force was able to obtain 4,856 signatures for the petition by May 2019. Id. at ¶ 28. The Task Force formally requested an election on May 8, 2019, by submitting the petition to defendant John Long, the Superintendent of BIA's Pine Ridge Agency. (Docket 10-1). On May 9, BIA acknowledged receipt of the petition to OST President Bear Runner and plaintiff Caroline New Holy. (Dockets 10-3 & 10-4). BIA also requested a list of eligible OST voters from the tribal enrollment office for purposes of validating the petition's signatures. (Docket 10-5).

On June 17, defendant Danielle McQuillen, the then-Acting Regional Director of BIA's Great Plains Regional Office, found the petition invalid in a letter

sent to Ms. New Holy.[1]   (Dockets 15 at ¶¶ 2-3, 7-8 & 15-1).   BIA concluded 1,292 of the petition's 4,825 signatures were invalid for a number of reasons. (Docket 15-1 at p. 2).   It confirmed the validity of 3,563 signatures, less than the required 4,094 which constituted one-third of all eligible OST voters.   Id.   The letter advised the decision was "a final agency action on the status of the petition."   Id.

Task Force member Valentina Merdanian contacted Ms. McQuillen on June 24 by e-mail and asked, "What is the time frame to submit an appeal?" and "What is the time frame to collected [sic.] the additional signatures needed?" (Docket 27-1 at p. 1).   Ms. McQuillen informed Ms. Merdanian there was no agency appeal of the petition denial and that "the next level would be a federal lawsuit[.]"   Id.   She also stated that, once the petition is filed with BIA, "the time for collecting signatures on the submitted petition has passed[.]"   Id.   The record reflects that the Task Force had been in contact with Ms. McQuillen about the petition throughout 2018 and 2019.   (Docket 23-1 at pp. 13-30).   Plaintiff Stephanie Star Comes Out, Ms. Merdanian and Task Force member Nakina Mills each assert Ms. McQuillen did not inform them they "could simply request a reconsideration from the BIA[.]"   (Dockets 23 at ¶ 10, 24 at ¶ 4 & 25 at ¶ 4).   Mr. Long and Ms. McQuillen each assert the Task Force did not request an extension of time to collect signatures.   (Dockets 10 at ¶ 15 & 15 at ¶ 10).

---

[1]The record often refers to Ms. McQuillen as Danielle Daugherty, her former name.

### III. Analysis

A review of the legal framework for amending the OST Constitution assists in understanding the present dispute. The IRA governs ratifying proposed amendments to the OST Constitution. Amendments "become effective when ratified by a majority vote of the adult members of the tribe . . . at a special election authorized and called by the Secretary [of the Interior] under such rules and regulations as the Secretary may prescribe[.]"  25 U.S.C. § 5123(a)(1). The election is known as a "secretarial election[.]"  25 C.F.R. § 81.4. A secretarial election to amend a tribal constitution must be held within 90 days of BIA's receipt of a tribal election request. 25 U.S.C. § 5123(c)(1)(B). The number of signatures needed to trigger a tribal election request is governed by tribal law. 25 C.F.R. § 81.57(a). Under the OST Constitution, a petitioner needs signatures from one-third of eligible tribal voters to request a secretarial election to amend the Constitution. OST Constitution Art. XI. BIA requires a petition for a secretarial election to obtain the required signatures within a year from the date of the first signature. 25 C.F.R. § 81.58. However, the Secretary of the Interior may "waive or make exceptions to his regulations . . . in all cases where permitted by law and the Secretary finds that such waiver or exception is in the best interest of the Indians." 25 C.F.R. § 1.2.

Plaintiffs assert the court has subject matter jurisdiction over their complaint under the Administrative Procedure Act ("APA") and the federal

question jurisdiction statute, 28 U.S.C. § 1331.[2]  (Docket 1 at ¶¶ 10-11).  The complaint does not list which source of jurisdiction covers each count.  Counts I and II concern the deadline to submit petition signatures, while Count III alleges a breach of trust.  The court assumes Counts I and II arise under the APA, while Count III invokes federal question jurisdiction.[3]

## A. Failure to extend petition deadline

Count I of the complaint—captioned "Fairness Dictates An Extension of Time"—alleges defendants "have the authority and the duty to make an exception to the one-year rule to permit the Plaintiffs a six (6) month extension of time to obtain the requisite signatures[.]"  (Docket 1 at ¶ 38).  Count I further asserts defendants "have a duty to act in the best interest of the Indians pursuant to 25 C.F.R. § 2.1 and should therefore make a waiver or exception to the rule and permit the Plaintiffs a short extension of time to complete their task."  Id. at ¶ 41.  The court construes Count I as an attack on BIA action arising under the APA.

The APA waives the United States' sovereign immunity and permits judicial review of "agency action" which causes "legal wrong[.]"  5 U.S.C. § 702;

---

[2]Plaintiffs abandoned their dubious assertion that the Racketeer Influenced and Corrupt Organizations Act provides subject matter jurisdiction for their claims.  (Docket 22 at p. 1).

[3]The court will assume without deciding that plaintiffs' breach of trust claim may proceed as an exercise of federal question jurisdiction.  See Rosebud Sioux Tribe v. United States, 3:16-CV-03038, 2017 WL 1214418 at *7 n.5 (D.S.D. Mar. 31, 2017) (collecting district court cases holding breach of trust cases invoke federal question jurisdiction).

8

Iowa League of Cities v. E.P.A., 711 F.3d 844, 860 (8th Cir. 2013).  Only "final agency action for which there is no other adequate remedy in a court" is subject to judicial review.  5 U.S.C. § 704.  However, if judicial review is barred by statute or if the "agency action is committed to agency discretion by law[,]" the APA does not permit review.  Id. at § 701(a).  Defendants assert the use of the Secretary's power to waive regulations is committed to agency discretion and is thus unreviewable.  (Docket 9 at pp. 6-7).  The court declines to consider this argument because plaintiff produced no evidence of a final agency action with regard to waiver.

The Supreme Court explained that "two conditions . . . generally must be satisfied for agency action to be 'final' under the APA."  U.S. Army Corps of Eng'rs. v. Hawkes Co., Inc., 136 S. Ct. 1807, 1813 (2016).  "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  Id. (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)).

Here, there is simply no agency action with regard to waiver the court could conceivably construe as final.  The record contains no indication BIA ever considered waiving the secretarial election regulations to permit the Task Force more time to collect signatures.  Plaintiffs do not argue they ever asked BIA for a

waiver.[4]   Nor does the record contain any decision by the BIA denying a waiver. If any agency action took place with regard to a waiver, no party has presented evidence of it.   There is no action "mark[ing] the consummation of [BIA's] decisionmaking process[.]"   Hawkes Co., 136 S. Ct. at 1813 (internal quotation omitted).   There is thus no final agency action for the court to review.[5]

In their prayer for relief, plaintiffs ask the court to direct BIA to extend the timeline for gathering signatures.   (Docket 1 at p. 9).   The APA permits courts to "compel agency action unlawfully withheld or unreasonably delayed[.]"   5 U.S.C. § 706(1).   "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."[6] Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis in original).

---

[4] Plaintiffs attempted to discover facts "to determine whether they asked defendants for an extension of the petition deadline before filing suit."   (Docket 21 at p. 2).   The court denied discovery, noting that plaintiffs could "attest to their remembrances" concerning any requested waiver to achieve an extension. Id. at p. 3 n.2.   Plaintiffs asserted they expected Ms. McQuillen to inform them about opportunities for "reconsideration," see supra Section I, but did not contend they asked for an extension.   In any event, whether they asked for an extension is not dispositive.   It is uncontested that the BIA issued no waiver decision.

[5] Plaintiffs do not challenge BIA's decision that the petition did not contain the required number of signatures, its evaluation of the signatures, or its conclusion that many of the signatures were invalid.   The court has no occasion to review those agency actions.

[6] The United States Court of Appeals for the Eighth Circuit likened a claim for relief under § 706(1) to a petition for a writ of mandamus and applied the strict criteria governing mandamus relief.   Org. for Competitive Markets v. U.S. Dep't. of Agric., 912 F.3d 455, 462-63 (8th Cir. 2018).   The court need not consider whether plaintiffs would be entitled to mandamus relief because the proposition fails under the more lenient Norton standard, as there is no legal authority requiring the BIA to waive its regulation.

Here, there is no source of law requiring the BIA to waive its petition deadline. Waiver is clearly discretionary.   25 C.F.R. § 1.2 ("[T]he Secretary retains the power to waive . . . ."); Muwekma Ohlone Tribe v. Salazar, 708 F.3d 209, 212 (D.C. Cir. 2013) ("Interior *may waive* [a regulatory] process if waiver is, in Interior's view, "in the best interests of the Indians.") (citing 25 C.F.R. § 1.2) (emphasis added).   Accordingly, the court cannot compel BIA to waive its deadline regulation.

Because the APA does not permit judicial review of the BIA's alleged failure to waive the regulation establishing the signature collection deadline, defendants retain the United States' sovereign immunity.   Count I is dismissed for lack of subject-matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).

### B.     Arbitrariness of signature collection deadline

In Count II, plaintiffs allege the one-year signature collection deadline "is arbitrary, simplistic, unnecessary and has no meaningful basis[.]"   (Docket 1 at ¶ 43.   They further allege the deadline "should not be adhered to" where "adherence to the rule is not in the best interest of the Tribe or fair."   Id. at ¶ 44.

The legal nature of this claim is uncertain from the face of the complaint, nor do plaintiffs explain it in their briefing.   To the extent plaintiffs are challenging BIA's power to set the deadline, the challenge fails.   In the IRA, Congress delegated authority to make regulations for secretarial elections to the Secretary of the Interior.   25 U.S.C. § 5123(a)(1).   The ability to set a time limit

11

for signature collection clearly falls within BIA's statutory authority to regulate secretarial elections.

If plaintiffs are arguing BIA's choice of one year as a time limit is contrary to law, that argument would also fail.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. . . . In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-44 (1984). The IRA did not set any specific time limit for signature collection, so Congress has not "directly spoken to the precise question at issue." Id. at 842. The question is thus whether BIA's interpretation is "reasonable"—that is, whether it is a "permissible construction of the [IRA.]" Id. at 843-44.

A one-year time limit is reasonable. In the 2015 notice of rulemaking which established the deadline, BIA wrote that it chose one year "because in some cases, the number of signatures required would require several months and possibly up to a year, to collect them all." Secretarial Election Procedures 80 Fed. Reg. 63,094-01, 63,103 (Oct. 19, 2015). "[T]he question a court faces

when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*." City of Arlington, Tex. v. F.C.C., 569 U.S. 290, 297 (2013) (emphasis in original).  The deadline does not contradict the IRA or any other provision of law of which the court is aware.  Accordingly, the deadline stands.  The court does not have the power to judge the wisdom of BIA's choice.

Count II is dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

**C.     Breach of trust**

Count III asserts, in its entirety, that defendants "acted arbitrarily, capriciously, and in direct violation of federal law and their trust responsibility to Plaintiffs by failing to exercise their discretion pursuant to 25 C.F.R. § 1.2 and unreasonably failing to proceed with the secretarial election[.]"  (Docket 1 at ¶ 46).  The count is labeled "Breach of Trust Responsibility."

Although Count III recites buzzwords from the APA context, a breach of trust claim is not administrative in nature.  "A treaty is essentially a contract between two sovereign nations."  Herrera v. Wyoming, 139 S. Ct. 1686, 1699 (2019) (internal quotation omitted).  "[T]he existence of a trust relationship between the United States and an Indian or Indian tribe includes as a fundamental incident the right of an injured beneficiary to sue the trustee for damages resulting from a breach of the trust."  United States v. Mitchell, 463 U.S. 206, 226 (1983).  "The existence of a trust duty between the United States

13

and an Indian or Indian tribe can be inferred from the provisions of a statute, treaty or other agreement, 'reinforced by the undisputed existence of a general trust relationship between the United States and the Indian people.'" Blue Legs v. United States Bureau of Indian Affairs, 867 F.2d 1094, 1100 (8th Cir. 1989) (quoting Mitchell, 463 U.S. at 225). To state a breach of trust claim, plaintiffs must "identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." United States v. Navajo Nation, 537 U.S. 488, 506 (2003).

Plaintiffs do not identify any source of law establishing a trust duty BIA owes them as individuals with regard to secretarial election signature collection rules.[7] They cite the well-established canon of construction requiring courts to liberally interpret treaties and statutes in favor of tribal interests. Dockets 1 at ¶ 36 & 22 at p. 7; see, e.g. Herrera, 139 S. Ct. at 1699. But the court cannot invent a trust duty for plaintiffs' benefit under the guise of interpretation. See United States ex rel. Steele v. Turn Key Gaming, Inc., 260 F.3d 971, 979 n.9 (8th Cir. 2001) ("[T]he rule does not require that the Indian party should win in each individual case."). Without an identified trust duty, plaintiffs cannot maintain a breach of trust claim.

Count III is dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

---

[7]Plaintiffs brought suit as individuals. They do not purport to act on behalf of the Task Force or the OST.

**ORDER**

For the reasons given above, it is

ORDERED that defendants' motion to dismiss (Docket 8) is granted.

IT IS FURTHER ORDERED that the complaint (Docket 1) is dismissed.

Dated June 30, 2020.

                            BY THE COURT:

                            /s/ *Jeffrey L. Viken*
                            JEFFREY L. VIKEN
                            UNITED STATES DISTRICT JUDGE